CHICAGO, M. & ST. P. RY. Co. *v.* PULLMAN PALACE-CAR Co.

*(Circuit Court, N. D. Illinois.* December 31, 1891.)

INJUNCTION—RESTRAINING ACTION AT LAW—RELIEF IN EQUITY.

Complainant railroad company and defendant car company entered into a contract for the joint ownership and operation of parlor and sleeping cars; the accounts to be kept by defendant, and monthly balances and payments to be made; complainant, in case of termination, to pay defendant the cash value of its interest in the joint property. On the termination of such contract, the property being in custody of complainant, defendant brought trover to recover its interest in the property, whereupon complainant filed a bill in equity for an accounting, alleging incorrect and unfair accounts by defendant of the receipts and expenses, and the retention by defendant of profits in excess of its interest in the property, and asking to restrain the action at law. *Held* that, as the rights of both parties could be completely protected in equity, the action at law should be enjoined.

In Equity.

*Walker & Eddy* and *John W. Carey,* for complainant.

*Isham & Beale,* for defendant.

GRESHAM, Circuit Judge. Having owned and operated sleeping-cars on its own lines prior to September 22, 1882, the complainant on that day entered into a contract with the defendant, under which the latter acquired the right and assumed the obligation of operating sleeping-cars, parlor-cars, and hotel-cars, on all lines owned by the complainant, for 15 years, for the joint benefit of both parties. The cars previously owned by the complainant became joint property, the defendant paying for a one-fourth interest in them. It was contemplated that additional equipment would be needed, and it was obtained. The complainant was to have three-fourths of the profits, and the defendant one-fourth, and losses were to be borne in the same proportion. It was made the duty of the defendant to keep accurate books of account, showing receipts and expenses, profits and losses, and balance the books monthly. Payment was to be made by one party to the other, on such showing, before the end of the succeeding month. The complainant had the right to inspect the books at all reasonable times. Section 22 of article 3 of the contract reads:

"In case either of said parties shall at any time hereafter fail to keep and perform any of the covenants herein contained, to be by such party kept and performed, then and in that case, after written notice shall have been given to the defaulting party of the default complained of, if the said defaulting party shall refuse or neglect to make good, keep, and fulfill such unfulfilled covenants and conditions of this agreement, within a reasonable time after such notice, the other party shall be at liberty to declare this contract ended, and no longer in force. The railway company reserves the option and may elect to terminate the contract set out in the article at the end of five (5) years or at the end of eight (8) years or at the end of eleven (11) years from the thirteenth day of September, 1882: provided that, if it shall elect to terminate it at any of the above-named periods, it shall give notice in writing to the Pullman Company of such election at least six (6) months before the day or days on which it may so elect to have this agreement end. If the agreement set out in this article is terminated, according to the terms hereof, by the

election of the railway company, and without any fault or neglect on the part of the Pullman Company, the railway company shall purchase the undivided interest of the Pullman Company in all sleeping and hotel cars jointly owned by both companies, and pay the fair cash value thereof. If the railway company shall elect to terminate said contract because of the neglect or refusal of the Pullman Company, as herein provided, or the contract shall terminate by expiration of the time for which it is agreed it shall remain in force, the railway company shall have the first right and opportunity to purchase the interest of the Pullman Company in any or all cars thus jointly owned, by paying the fair cash value thereof." "In all cases the fair cash value to be paid by the railway company for the interest of the Pullman Company shall, in default of agreement by the parties, be fixed by the decision of arbitration, as provided in the twenty-fourth section of this article."

On March 12, 1890, a written notice was served on the defendant by the complainant that the latter had elected to terminate the contract on September 30, 1890. After this notice was given, the parties commenced negotiating for a new contract; and, in order to enable them to continue their negotiations, it was agreed, on September 26th, that the terms of the old contract should remain in force for 30 days after the 30th day of the same month, and, in case a new contract should be made, "it shall take effect from and after the 30th day of September instant, and whatever business is transacted during the thirty days succeeding shall be considered as transacted and performed under said new contract; but, in case no new contract shall be made, then it is understood and agreed that said business shall be settled and adjusted in pursuance of the terms of the old contract as it now exists." "It is further mutually understood and agreed that this stipulation and extension of time shall have no effect upon the rights of the respective parties, except as herein stated, and that, if no contract shall be completed, then and in that case the original contract shall cease and determine at the expiration of said thirty days from the 30th day of September, and no other further or additional notice shall be necessary or required for the purpose of terminating the same."

The parties failed to agree upon a new contract, and after the additional 30 days had expired, the cars being in the custody and use of the complainant, the defendant commenced an action of trover in this court against the complainant to recover the value of its one-fourth interest in the joint property on the ground that it had been unlawfully converted, and for damages for breach of the contract; and subsequently the complainant brought this suit for an accounting. The bill alleges that the defendant failed to perform the covenants in the contract; that it rendered monthly accounts of receipts and expenses, which were incorrect and unfair; that it retained more than its share of the joint profits; that it was notified from time to time that the accounts rendered did not show the correct amount of profits due the complainant; and that the amount still due largely exceeded the value of the defendant's interest in the joint property. The court is asked to restrain the prosecution of the action at law until this suit is finally heard. After giving to either party the right to annul the contract for failure of the other

to fulfill any of its covenants, the section above quoted authorizes the complainant, "without any fault or neglect on the part of the Pullman Company," to terminate the agreement at the end of three named periods. The complainant served a proper notice on the defendant for the annulment of the contract at the end of eight years from September 30, 1882; and it would have terminated on that day but for the agreement of September 26th, which continued it in force for 30 days more. It is now contended, however, that, because the complainant did not pay the defendant for its interest in the cars within six months after service of the notice, the contract is yet in force. Even if the language of section 22 is thus construed, the defendant stands confronted with the concluding paragraph of the agreement of September 26th, which, it may safely be assumed, the defendant entered into under the advice of counsel. If the complainant cannot terminate the contract without paying for the defendant's interest in the joint property within six months after the giving of the notice, the latter can maintain the partnership relation, notwithstanding the notice, by refusing to have the value of that interest ascertained as provided. In view of the explicit language of section 22, and the no less express language of the agreement of September 26th, it is not a debatable question whether or not the agreement has been terminated. A single contract is the foundation of both suits. Damages are claimed for its breach in both suits, and the defendant can accomplish nothing by its action at law that may not be accomplished by filing a cross-bill in this suit. It is clear that, in this suit in equity, all controversies growing out of the contract can be finally determined, and a decree entered against the party found to be indebted; and it is equally clear that the same result cannot be reached in the action at law. If the complainant should be permitted to prove the damages it alleges it has sustained in consequence of the defendant's breaches of the contract, by way of recoupment, in the action at law,—and I do not hold that it could,—it would be necessary for the jury to examine and pass upon numerous books and accounts, covering a period of eight years; and it is not to be expected that the verdict would be satisfactory. It is the peculiar province of a court of chancery to pass upon such accounts, and adjust the equities of the parties. There is no necessity for prosecuting both suits at the same time, and in this suit in equity the court can afford complete protection to all the rights of both parties. An order will therefore be entered, staying the prosecution of the action at law until the further order of the court.